Linda L. Beene, Director Board of Private Career Education 612 Summit, Suite 102 Little Rock, Arkansas 72201
Dear Ms. Beene:
This is in response to your request for an opinion on whether the Board of Private Career Education (the Board) has the authority under A.C.A. § 6-51-604 (Supp. 1989) to conduct a hearing concerning an unlicensed organization or school.
Although the resolution of this issue is not entirely clear following a review of the act, it is my opinion that the Board does have such authority.
The relevant provision provides as follows:
 (a) Whenever the board or director acting for the board has probable cause to believe that a person, agent, group, or entity has committed any acts that would be in violation of this subchapter, such as fraud, misrepresentation, or unethical practices,
the board or director acting for the board shall first give notice in writing by certified mail or in person, to the agency, or entity affected.
 (b) The person, agent, or entity will have ten (10) days in which to respond to the notice of violation.
 (c) If action on the part of the person, agent, or entity in response to notice is to seek to eliminate the violation, a further extension of time may be granted by the director acting for the board. Otherwise, the board may order a cease and desist of such acts after a formal hearing or the director shall have the duty to request the Attorney General or district prosecuting attorney in the county where the offense was committed to seek in a court of competent jurisdiction an injunction restraining the commission of such acts. [Emphasis added.]
The answer to your question turns upon the emphasized language above. That language gives the Board authority to conduct hearings on "any acts that would be in violation of th[e] subchapter." It is a violation of the subchapter to operate a private career school or solicit the enrollment of students residing in this state without a license. A.C.A. § 6-51-606(a) (Supp. 1989). Additionally, a criminal penalty is imposed for such unlicensed operation at A.C.A. § 6-51-612 (Supp. 1989). It appears then, that the Board would have authority to hold hearings regarding unlicensed operators because being unlicensed is an "act . . . in violation of th[e] subchapter." A question arises, however, as to whether the enumeration of such things as "fraud, misrepresentation, or unethical practices" limits the Board's authority under this section to holding hearings on these types of matters, and not upon such matters as the operation of unlicensed schools. Additionally, a question arises as to whether the criminal penalty for operating an unlicensed school was intended to be the sole remedy of the public in such instances.
It is my opinion that both of these issues can be determined in the negative. First, there is an established doctrine of statutory construction called "ejusdem generis" which provides that where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words. Cherokee Public Service Co. v. City ofWest Helena, 184 Ark. 38, 41 S.W.2d 773 (1941). The rule has been held equally applicable, however, where the opposite sequence is found, i.e. where the specific words follow the general ones, as in the statute in question here. Sutherland,Statutory Construction § 47.17 (4th ed). It is my opinion, however, that due to the particular language used, the doctrine of ejusdem generis does not apply in this instance to restrict the Board's authority to hold formal hearings to matters such as fraud, misrepresentation, and unethical practices. The doctrine is always used to determine the legislative intent, and does not control where the plain intent of the legislature would be hindered thereby. Wiseman v. Affolter, 192 Ark. 509,92 S.W.2d 388 (1936). In my opinion, because the specific words follow the general, and because the particular words "such as" are used, the specific enumeration was intended as merely illustrative, and not as words of limitation. See Donovan v.Anheuser-Busch, Inc., 666 F.2d 315 (8th Cir. 1981) (holding that "such as" are not words of limitation restricting a particular definition, but are an example or illustration of the nature and qualities included within the definition).
Additionally, had the legislature intended to restrict the Board's authority to hold formal hearings to licensees, it could easily have used the word "licensees" in the statute; that is, instead of providing that "whenever the board . . . has probable cause to believe that a person, agent, group, or entity
has committed any acts . . . in violation of th[e] subchapter. . . ." the legislature could have easily provided that "whenever . . . any licensee has committed any acts in violation of the subchapter. . . ." The legislature instead used broad generic terms to include any "person," not necessarily a licensee.
Second, there is nothing to indicate that the legislature intended for the criminal penalty set out at A.C.A. § 6-51-612 to be the exclusive avenue for addressing the operation of unlicensed schools. It appears that this provision, which imposes criminal misdemeanor liability, is independent from the Board's authority to hold formal hearings and issue cease and desist orders, or to have proceedings for an injunction instituted.
For these reasons, it is my opinion that the Board does have the authority to hold formal hearings concerning unlicensed schools.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
Sincerely,
WINSTON BRYANT Attorney General
WB:arb