McCAA CHEVROLET COMPANY *v.* BOUNDS, ADMINISTRATOR.

4-7455                                                183 S. W. 2d 932

Opinion delivered December 11, 1944.

*Bridges, Bridges, Young & Gregory,* for appellant.

*Wils Davis* and *Taylor Beare,* for appellee.

ROBINS, J. The question for determination here is whether the installments of monthly disability payments, due to an injured employee under the provisions of the Arkansas Workmen's Compensation Law, which mature after the death of the employee, become part of the assets of the employee's estate. The circuit court answered the question in the affirmative and rendered judgment against the employer and his insurance carrier in favor of appellee, as administrator of the estate of William D. McNeely, deceased, for $1,581.38, covering amount of unpaid and unmatured (at the time of McNeely's death) installments of partial permanent disability compensation payable to McNeely. To reverse that judgment appellants prosecute this appeal.

William D. McNeely, employed by appellant, McCaa Chevrolet Company of West Memphis, Arkansas, whose insurance carrier was appellant, Hartford Accident & Indemnity Company, on December 6, 1940, sustained an injury to his left eye, which destroyed 80% of the vision thereof. Liability under the Workmen's Compensation Law of Arkansas was admitted by appellants, and, with-

out the formality of an award by the Workmen's Compensation Commission, appellants commenced paying McNeely for his disability during the healing period at the rate of $19.59 per week. The healing period ended on February 18, 1941, whereupon appellants began to pay McNeely for his permanent partial disability at the rate of $19.59 per week. Under the statute he was entitled to receive one hundred such weekly payments. On May 26, 1941, McNeely and appellants filed a joint petition with the Arkansas Workmen's Compensation Commission asking for the privilege of making a lump sum settlement of the liability for these weekly benefits. This petition was denied. McNeely died on July 20, 1941, from causes not connected with the injury to his eye. It is stipulated that weekly payments aggregating $72.76 had accrued before McNeely died, and that, if he had lived to collect them, other weekly installments aggregating $1,533.62 would have been payable. Appellants tendered to appellee, in settlement of all liability, the sum of $72.76. This tender was refused, and appellee petitioned the Workmen's Compensation Commission for an order requiring appellants to make payment of the installments falling due after McNeely's death to appellee. This petition was denied and an appeal to circuit court was taken from the Commission's order thereon. Appellee also brought suit for these payments and the two proceedings were consolidated in the circuit court.

This court has not been heretofore called upon to decide the exact question involved herein.

The liabilities created by the Workmen's Compensation Law are neither *ex contractu* nor *ex delicto,* so that the provisions of statutes pertaining to survival of causes of action and our decisions construing these statutes are of no aid to us in answering the question posed by this litigation. The general rule is "that a cause of action cannot survive in favor of or against the personal representatives of a deceased person, unless it accrued in favor of or against decedent in his lifetime." 1 C.J.S. 184. Therefore, if it may be held that the liability for the payments sued for by appellee survived in favor of

McNeely's estate, authority for such holding must be found in the Workmen's Compensation Law.

This law contains no express provision for the survival, after death of the employee, of the liability of the employer and his insurance carrier to the injured workman; nor is it expressly provided by said law that such liability does not survive. Hence, it becomes necessary to determine whether, under a fair interpretation of this law, we may discover therein a legislative intention that the liability here involved survives after the death of the employee.

In ascertaining the intention of the legislature recourse may be had to the entire act under consideration. "The different parts of a statute reflect light upon each other . . . Hence, a statute should be construed in its entirety, and as a whole." 50 Am. Jur. 350. "The intention of the lawmaker is to be deduced from a view of every material part of the statute." *Hellmich* v. *Hellman*, 276 U. S. 233, 48 S. Ct. 244, 72 L. Ed. 544, 56 A. L. R. 379; *Cooper* v. *Town of Greenwood*, 195 Ark. 26, 111 S. W. 2d 452; *Bridwell* v. *Davis*, 206 Ark. 445, 175 S. W. 2d 992; *McClure* v. *McClure*, 205 Ark. 1032, 172 S. W. 2d 243; *Coca-Cola Bottling Company* v. *Kincannon, Judge*, 202 Ark. 235, 150 S. W. 2d 193, 134 A. L. R. 747; *Drainage District No. 18, Craighead County* v. *McMeen*, 183 Ark. 984, 39 S. W. 2d 713; *Berry* v. *Sale*, 184 Ark. 655, 43 S. W. 2d 225; *Rose* v. *W. B. Worthen Company*, 186 Ark. 205, 52 S. W. 2d 15, 85 A. L. R. 212; *Wiseman, Commissioner of Revenues*, v. *Affolter*, 192 Ark. 509, 92 S. W. 2d 388.

These portions of the Arkansas Workmen's Compensation Law may be said to throw some light on the question here involved:

(1). Sub-division (j) of § 19 of the Arkansas Workmen's Compensation Law * is as follows: "Whenever the Commission determines . . . that it is for the best interests of a person entitled to compensation, the liability of the employer for such compensation may be discharged by the payment of a lump sum equal to the

---

* NOTE: Act No. 319 of 1939.

present value of all future payments. . . . The probability of the death of the injured employee or other person . . . shall, in the absence of special circumstances . . . be determined in accordance with the American Experience Table of Mortality.'' It is difficult to draw from this language any conclusion other than that the legislature deemed the liability of the employer to the injured workman to be one that terminated on the death of the employee. Otherwise, in fixing the amount that should be paid to the injured worker in a lump sum settlement, the act would not have contained any provision for estimating the probable length of the injured worker's life. The quoted provisions of the act seem to be inconsistent with a conclusion that these disability payments were under the act required to be paid after the death of the employee.

(2). By § 21 of the act, it is provided that benefits payable to the employee shall not be subject to attachment, garnishment, or any other remedy by which a creditor of the employee might seek to collect his debt out of the benefit payments. To hold that these payments, on the death of the employee, become assets of his estate, and as such subject to the claims of the employee's creditors, would therefore in some degree conflict with the intention of the Legislature, thus expressed, to keep these funds absolutely free from seizure by creditors in any kind of proceeding.

(3). By the same section (§ 21) the Legislature prescribed that the liability of the employer for compensation to the employee should not be assignable. One of the tests of the survivability of a cause of action is its assignability. Ordinarily, if a cause of action is not assignable, it does not survive. ''The causes of action that survive are assignable; those that do not survive are not assignable. 4 Cyc. 23.'' *Arkansas Life Insurance Company* v. *The American National Insurance Company,* 110 Ark. 130, 161 S. W. 136. ''One test that is quite uniformly used to determine survivability is whether or not the cause of action may be assigned. Ordinarily, causes of action which are not assignable do not survive.'' 1 Am. Jur. 69.

While there is some conflict in the decisions of other courts of last resort, the weight of authority in America supports the view that the liability of the employer does not survive the death of the workman in a case of this kind.

The rule is thus stated by the Supreme Court of Minnesota in the case of *Employers' Mutual Liability Insurance Co.* v. *Empire National Bank & Trust Co.,* 192 Minn. 398, 256 N. W. 663, 95 A. L. R. 250: "It seems, however, to be quite uniformly held that, where an injured workman, who is receiving compensation due to an injury, dies from causes other than the injury, his right of compensation terminates with his death, and his heirs are entitled only to the amount of installments accumulated during his lifetime. *Tierney* v. *Tierney & Co.,* 176 Minn. 464, 223 N. W. 773."

In the Annotation of vol. 15 of the American Law Reports, page 821, it is said: "It may be said in general, however, that under the statutes of the majority of the states in which the courts have considered the question, the right to compensation not yet accrued . . . is terminated by his death, and does not pass to his personal representatives or heirs."

In the same work there is appended to the opinion in the case of *Employers' Mutual Liability Insurance Company* v. *Empire National Bank & Trust Company, supra,* 95 A. L. R. 254, this annotation: "The right to compensation not yet accrued to which a dependent or beneficiary would become entitled is terminated by his death, and does not pass to his personal representatives or heirs . . ." Opinions of the Supreme Court of Oklahoma in the case of *Rounds* v. *State Industrial Commission,* 157 Okla. 145, 11 P. 2d 479, and the case of *Parkhill Truck Co.* v. *Emery,* 166 Okla. 280, 27 P. 2d 333, are cited by the editor in support of this statement.

In Corpus Juris, vol. 71, p. 558, it is said: "Except to the extent that a statute may otherwise provide, the unmatured award, or unsatisfied judgment of the court on appeal from an adverse decision of the commission,

does not become a part of the deceased workman's estate, but, depending on the terms of the statute, is either extinguished absolutely, or liability therefor abrogated if there are no dependents, or is recoverable by the dependents or by the personal representative of deceased as trustee in their behalf, subject in either case to the statutory limitations and restrictions imposed."

The Supreme Court of Tennessee, in the case of *Bry-Block Mercantile Co.* v. *Carson,* 154 Tenn. 273, 288 S. W. 726, held that where a workman was entitled to a certain sum a week for 175 weeks for loss of a leg and died after receiving 92 weekly installments, the employee's right to compensation for the remaining weeks died with him and did not survive to anyone. It was there said by Chief Justice GREEN, speaking for the Court: "We are of opinion that Carson's right to receive compensation for 83 additional weeks died with him, and did not survive to any one. To this effect is the decided weight of authority. *Murphy's Case,* 224 Mass. 592, 113 N. E. 283; *Bartoni's Case,* 225 Mass. 349, 114 N. E. 663, L. R. A. 1917E, 765; *Duffney* v. *A. F. Morse Lbr. Co.,* 42 R. I. 260, 107 A. 225, 15 A. L. R. 810; *Heiselt Const. Co.* v. *Industrial Commission of Utah,* 58 Utah 59, 197 P. 589, 15 A. L. R. 799; *Lahoma Oil Co.* v. *State Industrial Commission of Oklahoma,* 71 Okla. 160, 175 P. 836, 15 A. L. R. 817; and cases collected in Note 15 A. L. R. 821. Reasons given in the cases are that it is the purpose of workmen's compensation acts to make industry take care of its casualties. To that end compensation is provided for injured workmen in lieu of wages. Wages cease with death, and likewise compensation received in lieu of wages must cease with death. If the employee die from natural causes, his representatives have no claim against the employer. If the death results from injuries received in the industry, there are special provisions to take care of the employee's dependents. It would put an additional burden on the employer, not contemplated by the statutes, to require him to pay either wages or compensation to representatives of an employee who died from natural causes. If an employee had a vested right in compensation, he could will it away, and the employer would be paying this sub-

stitute for wages to persons with whom he had no connection. These and other reasons seem to abundantly sustain the majority rule. There are a few cases apparently to the contrary mentioned in the note 15 A. L. R. 821, but, upon investigation, they will be found to rest on peculiar provisions of statutes in those jurisdictions."

Other cases in which the same rule is announced are: *Proops v. Twohey Bros.,* 29 Ariz. 164, 240 P. 277, and *Bassett v. Stratford Lbr. Co.,* 105 Conn. 297, 135 Atl. 574 (overruling earlier case of *Forkas v. Int. Silver Co.,* 100 Conn. 417, 123 Atl. 831); *Cambridge Manufacturing Co. v. Johnson,* 160 Md. 248, 153 A. 283; *Lester v. State Compensation Commission,* 16 S. E. 2d 920.

The authorities set forth above, as well as an analysis of the text of the Arkansas Workmen's Compensation Law, impel us to the conclusion that the liability to an employee from his employer for compensation for disability, as created by this law, does not survive to the employee's estate after his death. Courts may only interpret and enforce laws as they are enacted by the legislative branch. And, in construing a law, a court is not at liberty to read something into the law that was not put therein by its framers, even if such a course may seem necessary in order to prevent an apparently unjust result in the case being considered.

The judgment of the lower court is modified by reducing same to $72.76, and, as so modified, is affirmed.

---

McFADDIN, J., dissenting. I respectfully dissent from the majority, and this is the process of reasoning impelling this dissent:

(a) The Arkansas Workmen's Compensation Law was not taken bodily from any other state, so we are not bound by any rule of construction from any other state. Cases from other jurisdictions are persuasive merely— that is, we follow the cases from other courts only when the reasoning in such cases convinces us of soundness.

This appeal presents a case of first impression in Arkansas. We are bound by no judicial precedent.

(b) There is no direct provision in the Arkansas Workmen's Compensation Law applicable to this case. That is, the act does not say that awards do survive or do not survive. The act is silent.

(c) Therefore, this court is unrestrained by judicial precedent and legislative mandate, and can decide this present case according to the real spirit of the Workmen's Compensation Law, and without any indictment of "judicial legislation" being levelled at the court. What, then, is the spirit of the Workmen's Compensation Law? We have said in previous opinions that the Workmen's Compensation Law should be liberally construed to effectuate its purpose. What is its purpose?

One of the purposes of the Workmen's Compensation Law is to give the working man more rights than he had before the law was enacted. Prior to the Workmen's Compensation Law, in order to recover for injuries, the working man (called the servant in legal parlance) was required in most cases to prove (1) some negligence of the master or a fellow-servant, and (2) absence of contributory negligence and assumed risk by the plaintiff. This is broadly stated, but it was the general condition that existed under the old law. Under the Workmen's Compensation Law these matters of negligence and assumed risk are obliterated. Broadly speaking, an injury in employment is all that need be shown in workman compensation cases. So the law was to benefit the working man.

Before the Workmen's Compensation Law, if the working man received a judgment for injuries, it survived to his estate. The award under the Workmen's Compensation Law was to take the place of the judgment under the old law. Certainly, if the working man is to be helped by the Workmen's Compensation Law, then the award under the compensation law should survive, just as the judgment survived under the old law. But under

the construction of the majority, the death of the working man leaves his estate without any claim to the award.

In the case at bar, the working man suffered a permanent injury to his eye. If he had secured a judgment against his employer under the old law, the judgment would have gone to his estate. I say the death of a working man makes his wife and children need the compensation after his death just as much as, or more than, they needed it during his life.

The majority say that the award is not assignable, and therefore does not survive. The fact that the award is not assignable is for the protection of the working man. It keeps his creditors from touching it. But the section against assignment was not to restrict the rights of the estate of the working man.

The majority say that the probability of death of an injured employee is to be computed under the American Experience Table of Mortality, and that this indicates that the award is not subject to survivorship. I think the reason, that the probability of death of the injured employee is to be computed according to the American Experience Table of Mortality, was to benefit the working man. If a working man be injured, witnesses could be called who would testify that the particular man in that particular condition could only live a short time. So the Workmen's Compensation Law, in order to broaden the rights of the working man, says that the expectancy of a particular individual is not to be based on his particular ailment, but on the broad experience tables of mortality of mankind generally.

In other words, the very rules and reasons, cited by the majority, appeal to me as showing the opposite intention, because I believe that the purpose of the Workmen's Compensation Law was to benefit the working man, and that no construction of the act should be adopted which reaches the opposite conclusion when the court is free—as in this case—to interpret the law according to its real spirit.

For the reasons stated, I therefore dissent.